Good morning, Honorable Justices of the Court. We're judges. Judges of the Court. There are two types of claims that may be brought in federal court for breach of a collective bargaining agreement. There is the ordinary Section 301 claim, which requires that the employee prove that the employer breached the CBA. Sorry, can we back up for just a moment? Can you make your appearance on the record, state your name and who you represent, please? Apologies. Michael McEvoy Amaya, appearing on behalf of Tracey Lall. Thank you. Yes. And did you wish to reserve any time for rebuttal? Yes. Five minutes, please. Okay. So watch the clock. It's not in addition to. It's out of your 15 minutes. The two types of claims are the ordinary Section 301 claim, which requires that the employee prove the employer breached the CBA and that the employee exhausted the grievance procedures in the CBA. There is an exception to that exhaustion requirement, which is the hybrid Section 301 duty of fair representation claim. The elements of the hybrid claim do not require exhaustion. They require that the employee prove that the employer breached the CBA and the union breached the duty of fair representation. This has been the law of the United States and this circuit for six decades. So how is there a breach by the union when it was your client that decided not to proceed? With regards to the breach issue, the issue is the investigation, number one, also not enforcing certain provisions of the You can say investigation, but frankly, the evidence seems to indicate that the union local did what it needed to do. And then your client said, I don't want to go to mediation. Subsequently said, I don't want to go to arbitration. Apparently did that because of your advice not to do it without an attorney. And after it was explained that under the circumstances an attorney wasn't permitted, she still said, I don't want to do it. So how is that a breach by the union? Well, number one, the timeline of this is incredibly important. She was terminated on the 11th of January of 2020. The Board of Adjustment meeting was held on January 22nd of 2020. At the Board of Adjustment meeting, she was told by her union representative to get a new job. And between that date and the date we filed the complaint in July of 2020, there was no notice that the grievance was still live. So they are proceeding in secret. They called her about participating in the mediation, and they called her about participating in the arbitration, and there were written e-mails back and forth. So if you're telling me she never heard squat from the union from January on, I'm troubled because it's not consistent with my recollection of what I looked at. There were e-mails between the union and the employer. There were not e-mails to my client stating that they were proceeding with arbitration. My client was under the impression that they had just told her to get a new job, and we had no evidence. So it wasn't your client that responded by saying, no, I don't want to go to arbitration. That was after the statute of limitations had run. That was in August of 2020, August 17th. The statute of limitations on the claim were from the termination, which the court said the statute of limitations ran out. Did she or did she not respond by saying she did not want to go to mediation and subsequently that she did not want to go to arbitration? She did say that after the lawsuit was filed. And I'm not sure I understand what difference that makes, because the union was entitled to proceed with the grievance, and your client was entitled to proceed with the grievance separate and apart from the filing of the lawsuit. Again, my client was not aware that they were proceeding. And if I had not brought the claim. You just acknowledged that she responded saying that she did not want to proceed. So at that point, she had to be aware that they were proceeding, and she said she didn't want to participate. Repudiation of the grievance procedure, again, for the hybrid claim is not required. With VACA, they established that when the duty of fair representation is breached and, again, this is their explanation. Is the union breached a duty of fair representation?  And if it did what it needed to do to get up to mediation and to get up to arbitration and your client said, no, I don't want to participate, I'm having a hard time figuring out how the union could have breached its duty. Well, in Hines, the court held that to the investigation portion of it, the union does not meet its duty of fair representation unless it conducts a reasonable investigation to prove the union member's claim all the way up until the last portion of the grievance procedure. In this case, we had the 30B6 witness who testified that he did not investigate the basis for the termination, which was the basis for the termination, which was the cash variance. Even leaving aside the fact that she's the one that said she didn't want to participate, your brief tells us there was substantial evidence about the union local not investigating. And your brief cites nothing to support the proposition that you just state in the brief. What evidence supports that proposition and why wasn't it put to us in the brief? The 30B6 witness testified repeatedly every time I asked. It's not our job to go out and find what you have inside it. It wasn't the district court's job either. But that apparently is how you've approached this case. So you better be pretty specific in saying what in the record supports the claim which you've made in your brief without any support whatsoever. The 30B6 witness repeatedly testified, and this is in the brief, every time I asked them what why they didn't request certain documents. And the response was consistently over and over again, we didn't get that far in the  We did not get that far in the investigation. And then when I levied the final question at that deposition, did you investigate the cash variance discipline, the response from the 30B6 witness was no. And then in addition to that, we had the two letters that were sent to my client after the complaint was filed that said they were still investigating it. So they had not investigated the reason for the termination prior to the filing of prior to the board of adjustment meeting. And so that is why once the 30B6 witness said no to did you investigate the basis for the termination, we believe that we had the claim for lack of investigation. And again, because of the exhaustion requirement does not apply to the hybrid claim, repudiation would not apply. The same thing happened in J. In J and Carr, the two cases relied on by my opposing counsel and the district court for this matter. They follow the same rubric. They go and they address the DFR claim. They rule that it lacks merit on the evidence. And then they state that the 301 claim alone cannot be maintained. That didn't happen here. Here the district court applied the exhaustion requirement to the DFR claim without addressing the issue, the claims on the merits, the investigation issue, the not enforcing the provision of the CBA that allowed the union to challenge the other live discipline, numerous other things that it didn't do. And again, because the court applied the incorrect legal test, the issue on appeal because it didn't address the DFR claim on the merits, the issue on appeal centers on the incorrect legal test. Now, if the court comes back, if it was remanded and the court came back and determined that the DFR claim lacks merit, that would be one thing. But the court did not do that. It applied the exhaustion requirement to the hybrid claim, which is not permissible. I mean, this has been held in VACA. In Sysak v. O'Mara, the Supreme Court held, and I quote, it is beyond cavil that a suit against the union for breach of its duty of fair representation is not subject to the ordinary rule that administrative remedies must be exhausted. This court held in Moira v. West Union International that exhaustion is not required, however, when the union acts in such discriminatory, dishonest, arbitrary, and perfunctory fashion to breach the DFR. The Jackson case, this court held the same. This has been 60 years of this law, USPS v. Mitchell, Clayton v. Automobile Workers, Bowen v. USPS. The exhaustion requirement, the only time the exhaustion requirement comes in to the hybrid claim is after the court addresses the DFR claim on the merits, and that didn't happen here. And again, the evidence that we relied on, and we were, we had not had a lot of discovery at the time, and so I waited to take the deposition of the union representative. And when the union representative said he did not investigate the basis for the termination, we believe that we had the duty of fair representation breach at that time. With regards to the sanctions issue, with regards to the sanctions order, the court finds that we acted in bad faith by filing the amended complaint on May 1st, 2020, after we received the text messages where she says, no, don't proceed with the arbitration. That was filed in February. It was granted on March 3rd before we got any of that evidence, or we were sent this letter from the local. And I was ordered to file that. It was the operative complaint. I, quite frankly, I just didn't know how to even proceed with the case without following the court's order by filing it. And so that can't, I mean, following a court order cannot be considered bad faith. In addition to that, with regards to the other issues listed in the sanctions order, with regards to the FMLA claim, I mean, I have dropped claims by not opposing summary judgment numerous times in numerous cases. This has never been an issue until this case. There is no rule on it. I was not aware of it. And when I was confronted with it at the district court, at the hearing, I was surprised that I had informed her that we had dropped the claim because we didn't oppose summary judgment on it. I was, you know, with regards to the preference of that, obviously I will not do that in the future. I will provide a separate, you know, specific notice. But this was not something that I had ever, that had ever come up previously when I have done that in the past. The same thing with raising arguments for the first time in a reply. That's a discretionary issue. And if it's, the court can consider it discretionary. Raising it in a reply can't be a sanctionable offense. I mean, the court itself gave them their opportunity to respond and said it was going to consider it. The only other issue I believe that they raised is supposed misrepresentations about the law and an e-mail that wasn't noticed at the hearing, that occurred at the hearing. I mean, sanctions for conduct that occurs at a hearing, I mean, the court did not conduct the but-for causation analysis that is required for such sanctions with regards to the Cromwell. And again, with regards to the sanctions that were awarded to Local 165, it's all rooted in the exhaustion issue. The letter that they provided to me asking to dismiss the claim cited two cases that did not relate to the exhaustion requirement that summary judgment was granted on for that claim. The cases that the court relied on, Jay and Carr, were not provided until summary judgment. And again, both of those claims follow that same rubric of evaluating the DFR claim, finding that it lacks merit based on the evidence, and then determining that exhaustion had not been, that exhaustion had not occurred. Do you want to reserve any time? I will reserve the rest of the two minutes. Thank you. Thank you. All right. Counsel, I understand you're splitting your time. Excuse me. Ms. Lerma is taking eight minutes and Mr. Dowling, seven minutes. So we'll separate the time on the clock. All right. There you go. Yes, Your Honor. Good morning, Your Honors. May it please the court. Luke Dowling on behalf of Unite Here Bartenders Local 165. I'd like to first address my opposing counsel's representations about how the duty of fair representation claim works, right? Heinz v. Anchor Motor Freight, which plaintiff relies on extensively, reaffirmed the principle from Republic Steel v. Maddox that an employee cannot sidestep the grievance machinery provided in the contract, and that unless he attempted to utilize the contractual grievance procedures for settling his dispute with the employer, his hybrid lawsuit gets dismissed. VOCA describes an exception to the principle from Maddox that excuses the grievant or the employee's failure to exhaust where the union's breach of the duty of fair representation prevents the employee from exhausting the grievance machinery. VOCA uses that phrase specifically, prevented by the union's breach of the duty of fair representation. For instance, in VOCA itself, the contention was that the union breached the duty of fair representation when it decided not to take the grievance to arbitration. In Heinz, the allegation was that the union breached the duty of fair representation in how it presented the case at arbitration, preventing the employee from receiving the remedies that they were due. But in both cases, and in all of these cases if you look at them, the employee's failure to obtain relief through the grievance process was caused by the union's breach of the duty of fair representation. That's just not the case here. With respect to Lal's pre-termination discipline, she never asked the union to file grievances about them. She didn't trigger the grievance machinery at all. As we explained in the papers, this isn't a mere technicality. Employees often, sometimes, receive discipline that they concede is meritorious. The union doesn't challenge discipline like that because there's no reason to. So it waits for employees to tell it that they think the discipline is unjustified and grieves the discipline. Lal admits in her interrogatories that she never asked the union to grieve any discipline except her termination. With respect to Lal's termination, she filed a grievance. It was processed through the pre-arbitration steps. And then she told the union she didn't want it to go to arbitration. Her termination went on remedy because she terminated the grievance machinery, not because of anything the union did. The allegation we've heard is that the union did not conduct a proper investigation and that is cited as the breach by the union of its duty of representation. Yes, Your Honor. So there are two things to say to that. One is the union did conduct an investigation. When it sent the initial grievance letter, it requested documents. It received those documents, both the discipline that Lal received and the spreadsheets supporting the fact that she had the cash shortages that the record in this case, in fact, showed she had. The record shows the union's representative reviewed that evidence. The record shows that the union's representative talked to Lal about her side of the story. Lal presented two explanations for what happened. One was discrimination. The union didn't find any evidence for that in its investigation, partially because Lal wouldn't participate after a certain point. And then also that maybe somebody had been using her swipe card to— and the variances were caused by somebody else using her swipe card, but there's a policy that requires employees to keep control of their point-of-sale system swipe card at all times. So the union talked to Lal, the union considered those, thought they were not good excuses for the variances. The union also requested evidence about the discrimination. The Cromwell refused to produce some of it because it was medical records and Lal refused to sign a waiver, but it investigated that. It got a timeline of all the leaves and other things that the Cromwell had given it. So the union did investigate. The counsel focuses pretty substantially on one sort of errant answer where, you know, he said at the end of a long line of questioning, you know, did you investigate? And he said, I hadn't at that time. But I think as we explain in the declaration and in the briefs, the misunderstanding by the union's representative about that question was pretty obvious given the fact that all of this investigation is documented in emails. Prior to Lal saying that she did not want to go through with mediation, arbitration, whatever, did she claim that she had been the victim of disparate treatment? She claimed that she was the subject of discrimination in her grievance letter or a grievance form submitted to the union requesting that the grievance be filed. Well, what I'm specifically getting into, didn't she claim that she was treated differently than other employees engaging in the same conduct or lack of conduct? I don't believe that specific allegation was raised to the union prior to the dismissal or prior to her saying she didn't want to go to arbitration. That's part of her claim against the employer here, isn't it? Yes, it is. The union wasn't aware. If you're referring to when it was raised in the complaint, the union wasn't aware of the complaint at the time it made the decision not to proceed to arbitration. It wasn't served until December of 2020. And the union reached out to her and she said, I don't want to proceed to arbitration in August of 2020. There's an isolated comment about the fact she felt as though she was discriminated against in the specific grievance form to the union. But the specific claim of disparate treatment wasn't raised to the union until it was served in December of 2020. Suppose the panel were to determine, this is hypothetical, obviously, were to determine that there were material fact questions about her disparate treatment and sent that part of her claim against the employer back. Doesn't that shed some light on the union's duty to investigate? Not in this case, Your Honor, because there's no causation between the union's alleged failure to investigate. The union stopped investigating once Lal said, I don't want to go to arbitration. So the fact that her grievance went unremitied through the grievance machinery is a result of her decision to terminate the grievance machinery. So the idea that the union has an obligation to continue investigation, even once a grievance told them that they don't want their grievance arbitrated, imposes an incredible practical burden on the union. It's got to investigate every discipline and every grievance filed. And that's actually what VACA stands for, the principle that the union doesn't have to do. It can choose between the grievances it's going to take to arbitration and those it isn't to avoid overburdening the grievance machinery. I see my time is up, so unless you have any further questions. I'm just going to keep you a moment over time. So is that a bright line rule? Are there any circumstances in which the employee could say, I don't want to go to arbitration, and the union would still have a duty to proceed, that they couldn't abandon the grievance? In the cases, right, it says that the employee has an obligation to attempt to exhaust the grievance machinery. So we submitted that it is a bright line rule. So if they say they don't want to participate, then the union has no more duty to pursue the grievance? Is that your position? I think that's right. I think it doesn't violate the duty of fair representation to take employees at their word about the handling of their grievances about their termination. They say they don't want to go. And here, right, the union said there was a text message. The union followed up and said, hey, will you attend if we arbitrate this grievance? And she said no, or she didn't respond more accurately. And so I don't think that the union has any duty to continue investigating or prosecuting grievances, you know, about an individual employee's termination when they seem to have abandoned it. They have no interest in following, in going forward with it. In Carr, there are, you know, they acknowledge that there are other situations, none of which were raised in the appellant's briefs, that could excuse not going forward, right, futility that the arbitration panel was biased, that sort of thing, or that the union had animosity towards her that tainted its decision. But there's no evidence that Law made that decision for any of those reasons, and there's no argument that's preserved before this court that Law made the decision not to proceed to arbitration for that reason. She says in her deposition, I just didn't want to go forward with my grievance anymore. Okay, thank you. Ms. Lerma. Good morning, Your Honors. May it please the Court, Diana Lerma for the Cromwell Defendants and Appellee. After having litigated this case for five years, there is one thing that is consistent throughout, and the one consistency is what came up in the district court's order, Judge Silva's order, where Mr. McAvoy-Amaya consistently misrepresents evidence, brings up issues on reply, not reply to the Cromwell's motion or to the union's motion, but on reply to his own motion, and conflates the issues and the evidence so much and muddies the water so much that it's hard to know what side is up. That is why, in front of Judge Silva, I accused Mr. McAvoy-Amaya of gaslighting her, because she would ask direct, legitimate questions as to representations he was making. For example, the representation that someone's testimony carries more weight than a declaration. Again and again, Judge Silva asked Mr. McAvoy-Amaya, what is your authority for that? Please tell me your authority for that. And after pivoting multiple times, I think it took about 60 pages of the transcript in order for him to finally come up with an answer, and there, to this day, still is no answer for that proposition. In responding, let me back up. All of the parties filed motions for summary judgment all at once. The Cromwell filed one, the union filed one, and Mr. McAvoy-Amaya filed one as well. And the way we dealt with the issues were we had the ADA claims that were pre-termination. We had the ADA claims that were the termination claim. We had the LMRA hybrid claim. And then we had the FMLA issue. The FMLA issue is the easiest and also the most difficult at times. Because of the way that the motions were drafted by Mr. McAvoy-Amaya, simply showing up to the court in March of 23 and saying, oh, Your Honor, I'm sorry, we're not proceeding with that claim. The court had prepared for that argument. My office had prepared for that argument. We had briefed that argument at length. At no point did Mr. McAvoy-Amaya say, we're going to withdraw that cause of action, specifically because even Ms. Lal in the evidence, she herself said to the Cromwell during all of this investigation, oh, I'm not asking for FMLA because I don't qualify. Ms. Lal knew that before the complaint was even filed. She knew that before she was terminated. Yet it was still a claim that Mr. McAvoy-Amaya continued with. And he blurred the pleading so much that in our motions, we actually had to spend 7.5 pages of looking at his evidence and disputing it in a chart. Because he literally would say X, cite to evidence that did not support that proposition. So the FMLA issue is indicative of how this entire case has been litigated and why Mr. McAvoy-Amaya has multiplied the proceedings more than necessary. Judge Silva's order should have been issued the day of the hearing in March of 2023. There was no reason that the order could not have been made that day. But it was Mr. McAvoy-Amaya's procedure and argument that day that prolonged that. Now, with regard to the pre-termination ADA claims, the ADA claims are time barred. We can all agree on the 300-day filing requirement based on the joint job sharing agreement between NERC and the EEOC. If you draw back those 300 days, the pre-termination claims, which were her requests for leave dating back to 2015 and 2016, all of those are way before that 300-day deadline. Even if you consider that something fell within it because Mr. McAvoy-Amaya argued the continuing violation doctrine, that continuing violation doctrine was brought up on reply to his own motion, which he does not appeal here. And this is something that Mr. McAvoy-Amaya consistently does. He brings up new argument. He brings up new facts on reply, which this Court, hands down, does not have to take, does not have to, I mean, does not prefer. Let me ask you to focus on a particular issue, if I could. And it's really suggested by the question asked a few minutes ago by Judge Hawkins. If we focus on a particular claim, and the one I want to focus on for this is the allegedly disparate treatment that Ms. Lahl received as compared to other people working at the hotel or the casino in the bar, where they had cash variances that did not result in termination. Now, you have provided responses in your brief with regard to at least some, I think probably all to some extent. But the question I have is summary judgment is supposed to be our examination on a de novo basis as to whether a reasonable fact finder could conclude to the contrary. And why is it that with at least some of the other employees having cash variances comparable or even greater than the plaintiff here, where termination was not the discipline imposed, why doesn't that at least raise a question of fact to be determined? Because the evidence as to the employees who were allegedly comparable isn't sufficient to show that they're comparable to Lahl herself. So Mr. McEvoy-Amaya points to these other comparable issues, but he doesn't – the law clearly states that they have to be sufficiently comparable to one another. So, for example, is there any proof that any of these people had cancer or didn't have cancer? That's not something that's in the record. In addition to that, there's no evidence in the record as to what they said when they were confronted with the variances. Here, Ms. Lahl, when confronted with her variances, said, oh, well, it wasn't me. I think they're trying to take my shifts. That's why someone's trying to get me in trouble. That's why someone's using my Infogenesis card to use the POS and mess up her bank. In order to compare those comparables that were cited by Ms. Lahl in her briefs, we would have to know what their response was. Oh, the jury would be asked, okay, you've got reasons whether or not other employees had health issues, what she said, but that gets to pretty finely grained arguments. And why couldn't a jury say, I don't think that's really the reason. She got fired and they didn't. And she had this health issue, and there's no evidence that they had that health issue. So why couldn't a jury reach that conclusion? I think that a jury could reach that conclusion. If they could, then why is it appropriate for summary judgment? Because the way that that argument was argued in the briefings did not make that an issue for the court to even reach. This is a fact question, not a briefing question. And the purpose of summary judgment is not to resolve questions of fact, but in part to determine if there are material questions precluding the entry of summary judgment. That's what Judge Clifton is asking you about. And I know over the course of this proceeding, it's difficult sometimes to distinguish between counsel behavior and pleadings and the like. But that's the question. And when you hear it from two of us, you know it's important to us. So why can we resolve this fact question right here, right now? Forget what counsel said. I think that based on the investigation that the Cromwell did, in addition to the investigation that the union did, the investigation was thorough, it looked at all of the issues, and it found that Ms. Lahl's cumulative and individual variances, there was four over, I believe, a couple-month period. The union has told us that they were unaware at the time they were deciding whether to investigate further of the complaint and the specific allegation that there was disparate treatment. Am I wrong about that? So Ms. Lahl's initial complaint did not involve any issues regarding disparate treatment. That is correct. In the investigation of the process, the union did look at the due back process and what those requirements are with regard to your cash back, dropping the money, taking the money. It is a very locked-down procedure, right, given that it does function in casinos in Las Vegas. It's not the union, it's not the Cromwell that is the decider of fact. It may well be true that after their apparently thorough investigations, they decided there wasn't a problem, but that doesn't mean plaintiffs can't try to persuade a jury or, if it's a bench trial, the judge that, in fact, there was disparate treatment, there was discrimination. So the question is, what is there that causes you to tell us a reasonable fact finder could not come to that conclusion? That the hotel didn't think there was discrimination doesn't do it. What evidence is there that rules out the possibility of a reasonable jury reaching that conclusion? Well, I think the threshold issue would be whether or not they're comparable enough to even be able to compare one to another. Yeah, but your decision that somehow the comparisons aren't close enough isn't the jury's decision. I mean, you told us some things about the other employees, but it tells they're not sufficiently comparable because we don't know whether or not they had cancer. I mean, that strikes me as the most minute, finely-grained basis. If you came in and gave us evidence that they did have cancer and still weren't fired, that might be meaningful. But to tell us that other employees might have had conditions that justified a different decision than was given with regard to plaintiff doesn't tell us that they did have other conditions that would explain. I mean, you can raise questions. You can complain, as you argued in the brief, that plaintiffs never investigated the details about the other employees. But they don't have to unless you can establish as a matter of law that a reasonable jury couldn't come to a different conclusion. So that's the problem I have here. What evidence in the record is there that would persuade us that a reasonable jury could not come to a different conclusion with regard to whether she was treated in a discriminatory fashion? I think it's the number of discrepancies and variances leading up to her termination. That is not what has been found in the comparable cases. Thank you, Your Honors. Thank you. I just want to address a few things that were said by opposing counsel here. With regards to the issue of whether the disparate or the treatment for her being singled out for her cancer was raised by Tracy in the initial proceedings before she was terminated, I would advise the Court to go take a look at the 2019 or 2020 grievance form that she filed. She did state that she believed that she was being singled out for her cancer. And then I would also ask the judges of the Court to go look at the two letters that Local 165 sent to her in August of 2020, both of which reference that she was being singled out or that she had alleged that she was being singled out for her cancer. She actually did raise the disparate treatment and being singled out for her cancer in her grievance. And the union stated that it was still investigating that issue, but she was terminated again for the cash variance. And I'm not here saying that based on the evidence with regards to the 301 claim, that the evidence ultimately adduced at the conclusion of the case, that the Court could have, you know, awarded summary judgment to them on that claim. But with regards to the issue of the evidence that I had at the time they asked me to dismiss the case, I had not taken the deposition of the 30B6 witness from the union. And when I did and I asked him repeatedly, did you get the cash register tapes, he said no. When I said why, when I asked him why, his response was we didn't get that far in the investigation. And he said that repeatedly. And then I asked the final question. At any point from the, you know, the point you got the grievance form to the point you canceled the grievance, did you investigate the basis of the termination? He said no. At that point, I believe that, reasonably believe that the investigation claim was legitimate. And the all the other stuff with regards to what investigation they actually did do came in a declaration that was submitted with summary judgment. And because of that, I feel like the sanctions awarded for that basis is quite unreasonable because that evidence, the declaration, didn't come until summary judgment. And the evidence I was relying on was the 30B6 witness testimony, and it was that he did not conduct an investigation into that issue, into the issue of why she was terminated. Thank you, Your Honors. Thank you. Thank you, counsel, for your arguments. And this case is submitted.
judges: HAWKINS, CLIFTON, BADE